**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CHI Q. DU,

                                         :

        Petitioner,                          Case No. 3:13-cv-121

                                         :          District Judge Walter Herbert Rice
     -vs-                                    Magistrate Judge Michael R. Merz

ERNIE MOORE, Warden,
 Lebanon Correctional Institution,

                                         :

        Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus pursuant to 28 U.S.C. §2254 is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

The Petitioner, who is represented by counsel, pleads Grounds for Relief which have been presented to the Ohio courts and attaches the relevant portions of the state court record, permitting consideration of the claims on the face of the Petition and attached exhibits without ordering an answer.

Petitioner pleads two Grounds for Relief:

> **Ground One:** Petitioner's rights to Due Process were violated by the Intorduction [sic] of Impermissible and prejudicial evidence.
>
> **Supporting Facts:** Evidence was presented of crime scene photos and injuries of a victim who was not the subject of the trial at issue. Over the objection and motion in limine of counsel, the

1

gruesome and prejudicial pictures were published to the jury.  The
alleged victim at the trial in issue in this case was not the person
shown in the photographs and a vast majority of the testimony at
the trial was not focused on the alleged victim at issue in this case,
but rather of a person which companion charges to which
Petitioner had already entered a plea of guilty.

**Ground Two:**  Due Process – Unreasonable determination of facts
in light of the evidence presented.

**Supporting Facts:**  Petitioner was charged with attempted
aggravated murder. The evidence presented against Petitioner
consisgted [sic] of evidence that given State and Federal auithority
[sic]does not rise to the level of attempted aggravated murder. The
alleged victim and petitioner did not have any history of violence
or abuse. The Petitioner and alleged victim did not have any prior
physical altercations. Petitioner did not attack alleged victim, but
in fact the evidence demonstrated that the alleged victim rushed the
Petitioner who had made no aggressive moves towards the alleged
victim. The photographs referenced in Ground One were the basis
of the conviction given the prejudice to the jury; instead of valid
evidence of actual guilt. The trial court thereby made an
unreasonable determination of the facts in light of the evidence in
violation of Petitioner's Due Process rights.

(Petition, Doc. No. 1, PageID 5, 7.)

## Procedural History

        Petitioner Chi Q. Du was indicted by the Greene County grand jury on November 13,

1997, on two counts of attempted aggravated murder arising out of assaults on Thuy Mai and

Eric Borton on October 28, 1997, at Wright State University.  *State v. Du*, 2011 Ohio 6306, 2011

Ohio App. LEXIS 5191, ¶ 3 (Ohio App. 2nd Dist. Dec. 9, 2011).[1]  Du fled the country and was

arrested years later in Canada, so that trial did not commence until March 15, 2010.  *Id.* On the

morning of trial, Du changed his plea to guilty as to Ms. Mai, but proceeded to trial as to the

---

[1] Judge Hall's opinion for the Court of Appeals is part of the record filed here by Petitioner (Petition, Doc. No. 1-4,
PageID 249, et seq.  The LEXIS version of the opinion is cited here for the convenience of the reader.

charge involving Mr. Borton.  After conviction by a jury, he was sentenced to two consecutive ten-year terms, one on each conviction.  The convictions and sentences were affirmed on appeal. *Id.* The Ohio Supreme Court declined further review.  *State v. Du*, 131 Ohio St. 3d 1510 (2012). The instant Petition followed within the time allowed by 28 U.S.C. § 2244.

## Ground One:  Improper Admission of Evidence

In his First Ground for Relief, Petitioner claims his right to due process and a fair trial was violated when the trial judge allowed the jury to see gruesome photographs of Thuy Mai. Petitioner's claim is not just that the photographs are gruesome, but that they are irrelevant to the charge involving Mr. Burton because Petitioner had already pled guilty to the charge that he attempted to murder Ms. Mai (Memorandum, Doc. No. 1-1, PageID 29).

Petitioner relies heavily on the case of *United States v. Hands,* 184 F.3d 1322 (11th Cir. 1999), where the defendant's convictions on drug charges were reversed because the trial judge had permitted "graphic evidence of his abuse of his wife. . ." which the circuit court found was irrelevant (Memorandum, Doc. No. 1-1, PageID 29-30).  Petitioner also asserts this Court should follow the two-stage analysis adopted by the Eleventh Circuit in *Colon v. Burnett*, 317 Fed. Appx. 922, 924 (11th Cir. 2009):  first decide if there was error committed in the admission of evidence, then decide whether that evidence "so infused the trial with unfairness as to deny due process of law." *Id.*, *quoting Felker v. Turpin*, 83 F.3d 1301, 1311-1312 (11th Cir. 1996).

Petitioner's trial strategy[2] was to plead guilty on the morning of trial to the charge involving Ms. Mai and immediately move the court to exclude from the trial on the remaining

---

[2] Petitioner is represented in these proceedings by the same counsel who represented him at trial and throughout the Ohio appellate process.

3

charges any evidence of prior bad acts.  (Memorandum, Doc. No. 1-1, PageID 37.)  Petitioner

complains that the trial judge permitted a third-party eyewitness and Ms. Mai herself to testify

about her injuries.  *Id.* at PageID 40.  In addition, thirteen photographs of Ms. Mai were

displayed to the jury, although the trial judge did not permit them to go back to the jury room.

*Id.* at PageID 41.  Counsel emphasizes that in most cases where the courts have found no

violation from admission of allegedly gruesome photographs, the pictures have been of the

victim whose case is being tried, not some other person.  *Id.* at PageID 42.  While counsel

concedes some testimony by the female victim was appropriate, the amount of evidence

permitted amounted to "a trial on the merits of the case to which Petitioner had already entered a

plea."  *Id.* at PageID 43.

Since adoption of the Antiterrorism and Effective Death Penalty Act in 1996, it has been

the law in habeas corpus cases that when a state court decides on the merits a federal

constitutional claim later presented to a federal habeas court, the federal court must defer to the

state court decision unless that decision is contrary to or an objectively unreasonable application

of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1);

*Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133,

140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362,

379 (2000).

Du presented what is now his First Ground for Relief to the Second District Court of

Appeals as his Third Assignment of Error which that court decided as follows:

> **[*P20]** In his third assignment of error, Du claims the trial court
> erred in allowing testimony regarding Mai's injuries and in
> allowing the State to display pictures of those injuries. Given that
> he already had pleaded guilty to attempted aggravated murder of
> Mai, Du contends any probative value of the testimony and
> pictures was substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury. Therefore, he argues that the testimony and pictures should have been excluded under Evid.R. 403(A).

**[\*P21]** When determining whether the probative value of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission. *State v. Lakes*, Montgomery App. No. 21490, 2007 Ohio 325, ¶20. The decision to admit or exclude relevant evidence is committed to the sound discretion of the trial court. Id. We will not disturb a trial court's ruling on the admissibility of evidence under Evid.R. 403(A) absent an abuse of discretion. *Id.*

**[\*P22]** We find no abuse of discretion here. Evidence regarding the nature and extent of Mai's injuries was admissible for at least two reasons. First, it was relevant for the State to establish Du's murderous intent when he stabbed Borton. Indeed, Du's intent when he attacked Mai was indicative of his intent when he stabbed Borton because the two incidents occurred almost simultaneously. We hesitate to characterize the attack on Mai as other "crimes, wrongs or acts" evidence as included in Evid. R. 404(B) because the attack on Mai is a cohesive part of the same event. However, 404(B) is at least instructive to indicate that other acts evidence of one's "motive,\* \* \* intent, \* \* \* [and] plan" may be admitted to prove those components when relevant. The vicious nature of the attack on Mai, as shown through the disputed evidence, was relevant to prove motive and intent. Second, as noted above, evidence regarding the nature and extent of Mai's injuries was relevant to the issue of prior calculation and design. The fact that Du violently attacked Mai in Borton's presence, despite knowing that Borton was willing to die for her, supports an inference that the jury could draw that the attack on Mai was calculated to result in Borton's death as well. The trial court did not act unreasonably or arbitrarily in finding that the probative value of the disputed evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The third assignment of error is overruled.

*State v. Du*, 2011 Ohio 6306, ¶¶ 20-22 2011 Ohio App. LEXIS 5191 at \*13-15 (Ohio App. 2nd

Dist. Dec. 9, 2011).

Petitioner has failed to demonstrate how this decision of the Ohio Court of Appeals is an

objectively unreasonable application of clearly established United States Supreme Court precedent. The court of appeals answered the basis relevance question and found two bases on which the evidence of Mai's injuries was relevant to prove Du's guilt of attempting to murder Borton. Petitioner presents neither argument nor authority to undermine that reasoning.

The usual rationale for excluding evidence of other "bad acts" is that:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. . . . The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States,* 335 U.S. 469, 475-476 (1948). But as the court of appeals noted here, Du's attempted murder of Mai is only in the most formalistic sense a "prior" bad act and plainly not offered to show he had a generally bad character which made it more likely he tried to kill Borton. Rather, the two stabbings were part of a continuous course of conduct on the same occasion and were logically linked by Du's anger at Mai's breaking up with him and beginning to date Borton.

Even if Du had shown that admission of the evidence regarding the attack on Mai violated Ohio evidence law, that would still not show a constitutional violation. Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983); *Bell v. Arn,* 536 F.2d 123 (6th Cir., 1976); *Burks v.*

*Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000).  Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly.  *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993), *quoting Dowling v. United States*, 493 U.S. 342, 352 (1990).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000), *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  The Supreme Court has defined very narrowly the category of infractions that violate fundamental fairness. *Bey v. Bagley*, 500 F.3d 514 (6th Cir.  2007), *citing Dowling v.  United States*, 493 U.S. 342, 352 (1990)(Identification from a trial which resulted in an acquittal could be introduced at second trial for similarities.)  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*.

Petitioner's First Ground for Relief is without merit and should be dismissed with prejudice.

### Ground Two:  Insufficient Evidence

In his Second Ground for Relief, Du asserts that the determination of guilt is based on an unreasonable determination of the facts.  The Magistrate Judge reads this as a claim that there is insufficient evidence to support the verdict and particularly the element of prior calculation and design (Memorandum, Doc. No. 1-1, PageID 48-49).  Petitioner does not cite any Supreme Court authority in this section of his Memorandum, but the argument is directed to showing there was insufficient evidence of prior calculation and design under the Ohio precedent.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358  (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses;  but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment

of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat.

1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).

On direct appeal, Du raised both insufficiency of the evidence and manifest weight of the

evidence assignments of error. The insufficiency claim does state a federal constitutional claim

as recognized in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The manifest weight claim,

however, does not; that is purely a matter of Ohio law and is not cognizable in federal habeas

corpus.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997), the Ohio Supreme Court reaffirmed the

important distinction between appellate review for insufficiency of the evidence and review on

the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

The Second District Court of Appeals considered Du's challenges to the weight and sufficiency of the evidence together. It held:

> **[*P5]** As set forth above, Du's first two assignments of error challenge the legal sufficiency and manifest weight of the evidence to support his conviction for attempted aggravated murder of Borton. In these assignments of error, Du disputes whether the State established that he "purposefully" and with "prior calculation and design" attempted to cause Borton's death. [Footnote omitted.]

> **[*P6]** When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471, 741 N.E.2d 594. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

> **[*P7]** Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being

11

against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717.

**[\*P8]** With the foregoing standards in mind, we turn to the evidence before us. Trial testimony established that Du and Mai dated for one and a half to two years while they were students at Wright State. Their relationship became "rocky," and they eventually quit dating. (Trial transcript at 195). After the break up, Du's behavior gradually changed. He began following Mai everywhere. (Id.). He would show up outside her classes even though he no longer was a student. Mai also saw Du appear other places, including the library, a restaurant, on the highway, and even at her house. (Id. at 197-203). Mai testified that it was as if Du had her schedule and showed up everywhere she went. (Id. at 203). Whenever Du appeared, he would attempt to talk to Mai about reviving their relationship. (Id.). At one point, Du admitted to Mai that he had been watching her sleep. (Id. at 197, 199). Mai found a shopping cart underneath her bedroom window and assumed that Du had used it to look in her room. (Id. at 199).

**[\*P9]** Du's behavior toward Mai "got worse" after she began dating Borton. (Id. at 205-206). He appeared with more frequency and continued trying to talk to her about reconciling. Mai discussed Du's "stalking behavior" with Borton, but she decided not to report it to police, fearing that it would get even worse. (Id. at 207). About a week before the incident at issue, Du appeared in a computer lab where Mai and Borton were working together. (Id. at 278). Du began pleading with Mai about getting back together. (Id. at 279). When Mai briefly left the room, Borton confronted Du, asking him to leave Mai alone. Du did not respond. (Id. at 280-281). Later that day, Du approached Borton alone in a campus parking lot. After inquiring about Mai's whereabouts, Du told Borton, "You're a pretty nice guy. I would hate to see something happen to you but I won't give up on getting her back." (Id. at 281-282).

**[\*P10]** Borton next encountered Du on the day of the knife attack.

That afternoon, Borton saw Du talking to Mai in the school library. Du once again was pleading to get back together with Mai. Borton and Mai decided to leave, and they began walking to Borton's car. Du followed them and asked Borton whether he would be willing to die for Mai. Borton said that he would. (Id. at 287). Du responded by becoming "visibly upset" and cursing at Borton. (Id. at 288). Du continued following Borton and Mai. When they reached Borton's car, Mai rebuffed Du's attempt to kiss her. (Id.). Later that evening, Borton and Mai were watching a movie at Borton's apartment when they heard a knock on the door. Fearing that it might be Du, they did not answer the door. (Id. at 290).

[*P11] Between 7:00 p.m. and 9:00 p.m. that evening, another Wright State student, Bichnhu Nguyen, was studying in the school library. Du approached her and asked where Borton and Mai were. (Id. at 180). Du appeared "agitated" and "anxious to find them." (Id.). Shortly thereafter, Nguyen called Borton and told him about her encounter with Du. (Id. at 181). Later that night, sometime after 11:00 p.m., Borton and Mai returned to Wright State so Mai could retrieve a jacket. (Id. at 291). While they were at the school, Du arrived and found them. (Id. at 292). As he had previously, Du began pleading with Mai to return to him. During the encounter, Du mentioned having been to Borton's apartment looking for them. (Id.). Borton and Mai proceeded to leave the building and head toward Borton's car. (Id. at 300-302). Du followed them to the parking lot. At some point, Borton got ahead of Du and Mai. He then heard Mai scream. (Id. at 303).

[*P12] Borton turned and saw Du holding a knife under her throat. (Id.). Du threatened to kill Mai if Borton moved. (Id. at 303). In response, Borton tried talking to Du to diffuse the situation. Du told Borton to shut up and stated, "If I can't have her th[e]n no one can." (Id. at 304). Du then cut Mai's neck and began stabbing her. Mai fell to the ground. (Id. at 304-307). Borton rushed to Mai's defense. He charged toward Du, who grabbed his shirt and stabbed him. The attack left Borton with multiple stab wounds to the right and left sides of his chest and abdomen. (Id. at 42). Borton fell to the ground and pretended to be dead. (Id. at 307-309). He then watched as Du returned to Mai and continued stabbing her. (Id. at 310). When Mai stopped moving, Du fled on foot. (Id.).

[*P13] On cross-examination, Borton provided additional testimony about the incident. He agreed with defense counsel that when he turned and saw Du holding a knife at Mai's throat Du advised him to leave or "get out of here." (Id. at 337). When questioned further by defense counsel, Borton then denied that Du

13

warned him to "back off" or to "stay away." Instead, Borton recalled Du telling him not to move. (Id. at 338). For her part, Mai recalled Du telling Borton to "[g]o away." (Id. at 226). Mai's impression was that Du wanted Borton to leave them alone. (Id. at 261-262).

[*P14] In light of the foregoing evidence, Du disputes whether the State established that he "purposefully" and with "prior calculation and design" attempted to cause Borton's death. With regard to purposefulness, Du claims that the stab wounds he made to Borton do not indicate a specific intent to cause death because they were not directed at the throat, heart, or spine. Du also stresses that he discontinued the stabbing when Borton collapsed. With regard to prior calculation and design, Du contends the evidence does not suggest a scheme to implement a calculated decision to kill Borton. Du notes that he did not act aggressively toward Borton until after Borton charged him. Du also points to the testimony that he told Borton to leave him alone with Mai. According to Du, events in the parking lot "unfolded quite quickly," leaving him with insufficient time to form a plan to kill Borton.

[*P15] Upon review, we find Du's arguments to be unpersuasive. A person acts purposely "when it is his specific intention to cause a certain result[.]" R.C. 2901.22(A). A jury may infer purpose to cause death when a defendant inflicts a wound with a deadly weapon in a manner that appears to be calculated to kill. *State v. Stallings*, 89 Ohio St. 3d 280, 291, 2000 Ohio 164, 731 N.E.2d 159. The number and location of a victim's stab wounds, and the manner in which they were inflicted, may support an inference of a specific intent to kill. *State v. Hayden* (Sept. 16, 1997), Franklin App. No. 95APA05-559, 1997 Ohio App. LEXIS 4203. A defendant need not stab his victim in the throat, heart, or spine to support a finding of purposefulness. In *State v. Luster* (July 25, 1985), Franklin App. No. 84AP-729, 1985 Ohio App. LEXIS 6848, the Tenth District held that intent to kill could be inferred where the defendant stabbed the victim in the abdomen. We agree. The record reflects that Du drove a serrated knife into Borton's chest and abdomen multiple times. In light of this evidence, the jury reasonably could have inferred that Du purposefully attempted to cause Borton's death. Such a conclusion is supported by legally sufficient evidence and is not against the weight of the evidence.

[*P16] We reach the same conclusion with regard to prior calculation and design. "There is no bright-line test to determine whether prior calculation and design are present. Rather, each case must be decided on a case-by-case basis." *State v. Braden*, 98 Ohio

14

St. 3d 354, 2003 Ohio 1325, ¶61, 785 N.E.2d 439. "However, where the evidence presented at trial 'reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.'" *State v. Fry*, 125 Ohio St. 3d 163, 2010 Ohio 1017, ¶154, 926 N.E.2d 1239, quoting *State v. Cotton* (1978), 56 Ohio St.2d 8, 381 N.E.2d 190, paragraph three of the syllabus .

**[\*P17]** Here the evidence supports a finding that Du acted with prior calculation and design when he attempted to kill Borton. The record reveals that Du and Borton were rivals for Mai's affection. Du's stalking behavior intensified after Mai began dating Borton, whose involvement with her angered Du. Approximately one week before the knife attack, Du made a veiled threat to Borton, telling him, "I would hate to see something happen to you but I won't give up on getting [Mai] back." On the afternoon of the attack, Du became "visibly upset" and cursed when Borton stated that he would die for Mai. That evening, Du sought a confrontation at Borton's apartment but was unsuccessful. Shortly thereafter, Du asked Wright State student Nguyen if she knew where Borton and Mai were. Du seemed "agitated" and "anxious to find them." This evidence supports a finding that Du was planning a confrontation with both of his victims.

**[\*P18]** We note, too, that Du, armed with a knife, followed both Borton and Mai to a poorly lit parking lot that evening. He then viciously attacked Mai, despite having been advised earlier in the day that Borton was willing to die for her. Therefore, the jury reasonably could have inferred that Du's attack on Mai was part of a tactic calculated to engage Borton as well. The record also contains testimony that Du told Borton not to move during the initial knife attack on Mai. This act of ordering Borton to remain present during the assault on Mai supports an inference that he planned to attack Borton next.

**[\*P19]** In reaching the foregoing conclusion, we recognize the existence of seemingly conflicting testimony about whether Du ordered Borton not to move or, in fact, advised him to go away. The jury was instructed on the lesser charge of attempted murder, and it could have found Du guilty of that crime, in the absence of prior calculation and design, if it believed that he simply wanted Borton to go away and did not plan to attack him. Based on all of the evidence before us, however, the jury's finding of prior

15

> calculation and design, and the corresponding finding of guilty for the attempted aggravated murder of Borton, is supported by legally sufficient evidence and is not against the manifest weight of the evidence. The evidence presented at trial supports a finding of guilt beyond a reasonable doubt, and the evidence does not weigh heavily against Du's conviction. Accordingly, his first two assignments of error are overruled.

*State v. Du, supra,* ¶¶ 5-19.

This decision is not an objectively unreasonable application of *Jackson v. Virginia, supra.* There was competent evidence about the number and nature of the wounds inflicted on Borton and the amount of time involved in the incident as a whole, combined with interactions among Du, Mai, and Borton before the night of the stabbings to support a finding on all the essential elements of the crime of attempted aggravated murder.

Petitioner's Second Ground for Relief is without merit and should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify that any

appeal would not be taken in objective good faith.

April 22, 2013.

s/ *Michael R. Merz*

United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).